IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| EMPOWER BRANDS LLC f/k/a HPC BRANDS LLC, a Delaware limited liability company,<br><br>        Plaintiff,<br><br>    v.<br><br>TRISTAR PRODUCTS, Inc., a Florida corporation, KISHORE MIRCHANDANI, an individual, and TREND MAKERS LLC, a Delaware limited liability company,<br><br>        Defendants. | Civil Action No. 23-1225-RGA |

MEMORANDUM ORDER

Before me is Defendants' motion to dismiss. (D.I. 9). I have considered the parties' briefing. (D.I. 10, 12, 13). For the reasons set forth below, Defendants' motion is GRANTED due to Plaintiff's failure to allege satisfaction of a condition precedent.[1]

**I.  BACKGROUND**

Defendants Tristar Products and Kishore Mirchandani sold their membership interests in HPC Brands, now known as Empower Brands, to Spectrum Brands. (D.I. 10 at 1 n.1; D.I. 12 at 1). The parties to the sale executed a Membership Interest Purchase Agreement ("MIPA"). (D.I. 10 at 1 n.1; D.I. 12 at 1).

The sale involved HPC's line of kitchen-appliance and home-essentials products. (D.I. 10 at 1). Under the MIPA, Tristar retained responsibility for "Excluded Liabilities" but not for "Assumed Liabilities." (*Id.* at 3; D.I. 12 at 2, 10). Excluded Liabilities are related to pre-closing

---

[1] Jurisdiction is based on diversity of citizenship. (D.I. 1 ¶¶ 11–15).

1

sales. (D.I. 10 at 3; D.I. 12 at 2 n.4). Assumed Liabilities are related to post-closing sales. (D.I. 10 at 3–4).

Plaintiff contends that after the closing, it became aware of complaints that certain products it had acquired caused injuries. (*Id.* at 4; D.I. 12 at 1). Plaintiff contends it had to stop selling those products, and the Consumer Product Safety Commission insisted on recalls. (D.I. 10 at 4; D.I. 12 at 1–2). Plaintiff contends that its recall-related expenses are losses arising out of Excluded Liabilities, but that Defendants refuse to indemnify Plaintiff. (D.I. 10 at 4).

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

"Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). I am "not required to credit bald assertions or legal conclusions improperly alleged in the complaint." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). A complaint may not be dismissed, however, "for imperfect statement of the legal theory supporting the claim asserted." *See Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014).

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id.* at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [complainant] pleads factual content that allows the court to draw the reasonable inference that the [accused] is liable for the misconduct alleged." *Id.* Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## III. DISCUSSION

Defendants argue that the Complaint should be dismissed because Plaintiff failed to satisfy a condition precedent prior to suing. (D.I. 10 at 14). The MIPA states that, generally, indemnification is Plaintiff's "sole and exclusive remedy" for breach of contract. (D.I. 1-2, § 9.5, at 82 of 266). Defendants contend the MIPA[2] requires Plaintiff to seek indemnification in the following order: "(i) first, from the R&W Insurance Policy to the extent available . . . ; (ii) second, from the balance of the Indemnity Escrow Amount at such time; and (iii) third, directly from Seller or, at Purchaser's option, the Founder . . . ." (D.I. 10 at 14 (quoting D.I. 1-2, § 9.4(g), at 81 of 266)). The Indemnity Escrow Amount is either $25 million or $50 million. (D.I. 1-2 at 15 of 266). Defendants argue that Plaintiff incorrectly contends that the first two options have been "discharged." (D.I. 10 at 14). Defendants contend that Plaintiff failed to exhaust the second option. (*Id.*). Although Plaintiff contends the Indemnity Escrow Amount "is unavailable because it is fully disputed in connection with other claims for indemnification concerning the MIPA," Defendants contend that the funds are available because nothing has been paid out. (*Id.*

---

[2] The MIPA is attached to the Complaint. (D.I. 1-2). Thus, I can consider it on the motion to dismiss.

3

at 15 (quoting D.I. 1-1 ¶ 37)). Given that Plaintiff did not submit a claim to the Indemnity Escrow Amount, Defendants argue that Plaintiff's claims should be dismissed. (*Id.* at 17).

Plaintiff argues the Complaint sufficiently pleads that any conditions precedent have been "exhausted and/or discharged." (D.I. 12 at 11). Plaintiff argues that the Indemnity Escrow Amount option has been exhausted because "it is fully disputed in connection with other claims for indemnification which are unrelated to this lawsuit." (*Id.* at 12). Plaintiff further contends the funds are unavailable because Tristar notified the escrow agent that it "objects to the release of any funds from the Indemnity Escrow Amount" and that the agent "is not authorized to release any of the Indemnity Escrow Amount without a Final Determination." (*Id.* (quoting D.I. 1-1 ¶ 37)).[3]

Defendants reply that Plaintiff did not cite any authority "for its suggestion that the existence of other claims implicating the escrow amount excuses Empower from complying with Section 9.4(g) of the MIPA with respect to the instant claims." (D.I. 13 at 8). Defendants argue, "There is no provision in the MIPA that would allow Empower to unilaterally determine that it need not follow the prescribed process for seeking indemnification, nor does Empower point to any case or other authority that would support such a result." (*Id.*).

I agree with Defendants that Plaintiff has failed to allege satisfaction of a condition precedent. Section 9.4(g) of the MIPA establishes that Plaintiff must seek indemnification in a particular order: first, from the R&W Insurance Policy; second, from the Indemnity Escrow Amount; and third, from Seller or Founder (in other words, from Defendants). (D.I. 1-2 at 81 of

---

[3] Plaintiff further argues, "In any event, any dispute as to whether Defendants' instruction to the Escrow Agent renders the Indemnity Escrow Amount unavailable is a factual dispute that may not be adjudicated on a motion to dismiss." (D.I. 12 at 12). Defendants reply that "the dispute is a legal one, not a factual one." (D.I. 13 at 9–10 ("The answer to this question does not turn on any disputed facts, and thus the Court can resolve it on a motion to dismiss.")).

266). Plaintiff's Complaint does not allege that it ever submitted a claim to the Indemnity Escrow Amount. (*See* D.I. 10 at 17; D.I. 12 at 11–12). Plaintiff thus cannot pursue the present case unless the condition precedent was exhausted. *See Weiss v. Nw. Broad. Inc.*, 140 F. Supp. 2d 336, 343 (D. Del. 2001) ("As a general matter, a condition precedent is an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises.").[4]

Plaintiff's arguments regarding exhaustion, however, are unpersuasive. Plaintiff does not offer any support for the proposition that an escrow amount is unavailable, and thus exhausted, merely because other claims have been made for the escrow funds. Plaintiff does not allege that any of the funds in the Indemnity Escrow Amount have been paid out. (*See* D.I. 10 at 15; D.I. 12 at 11–12). The escrow agreement, which is attached to the MIPA, provides that the escrow agent may release funds based on a "Final Determination." According to the escrow agreement, a "Final Determination" requires "a final non-appealable order of any court of competent jurisdiction . . . ." (D.I. 1-2 at 122 of 266). Plaintiff's Complaint does not plead any facts to suggest that a Final Determination has issued for any of the "other claims for indemnification concerning the MIPA which are unrelated to this lawsuit." (*See* D.I. 1-1 ¶ 37). I thus do not think that Plaintiff has sufficiently alleged that the funds in the Indemnity Escrow Amount are unavailable for the purpose of this dispute. *Cf. Consol. Edison Co. v. Herrington*, 752 F. Supp. 1082, 1085 (D.D.C. 1990) ("Plaintiffs' broad claims that the escrow fund may prove insufficient are plainly unripe . . . . The key issue here—whether the reserve will meet plaintiffs' claims in full—depends on the outcome of a number of future events, none of which can be anticipated or

---

[4] The governing law is that of Delaware. (D.I. 1-2 at 86 of 266).

5

predicted with certainty."), *aff'd sub nom. Consol. Edison Co. of New York v. Watkins*, 927 F.2d 1227 (Temp. Emer. Ct. App. 1991).

I am also unpersuaded by Plaintiff's contention that the funds are unavailable because Defendants "object[ed] to the release of any funds from the Indemnity Escrow Amount" and instructed the escrow agent to not release any funds without a Final Determination. (D.I. 12 at 12 (quoting D.I. 1-1 ¶ 37)). Any such communications merely reiterate what the parties contemplated in the MIPA. Section 9.6 of the MIPA, for example, states,

> Purchaser shall have the right to notify the Escrow Agent of any claim for indemnification made by Purchaser pursuant to this ARTICLE IX. Promptly following the final determination in accordance with this ARTICLE IX of any claim for indemnification made by Purchaser pursuant to this Section 9.6, upon request by Purchaser, Seller shall execute and deliver a certificate requesting the Escrow Agent to deliver by wire transfer to an account designated by Purchaser in immediately available funds in the amount of such claim as finally determined in accordance with this ARTICLE IX (not to exceed the Indemnity Escrow Amount).

(D.I. 1-2 at 82 of 266). Thus, regardless of what Defendants communicated to the escrow agent, the MIPA already states that an escrow agent cannot complete a wire transfer prior to a Final Determination. I thus disagree with Plaintiff that the communications create a factual dispute such that the motion to dismiss cannot be resolved.

Because Plaintiff has failed to allege satisfaction of a condition precedent or why that condition has been exhausted, I GRANT Defendants' motion to dismiss Counts I and II of the Complaint. Because I dismiss both counts for failure to satisfy a condition precedent, I do not need to reach the parties' arguments about ripeness, veil piercing, or alter ego liability.[5]

---

[5] I also do not need to reach any arguments about the R&W Insurance Policy, which is the first option for indemnification under the MIPA.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED due to Plaintiff's failure to allege satisfaction of a condition precedent. Counts I and II of the Complaint are hereby DISMISSED without prejudice.

IT IS SO ORDERED.

Entered this 8th day of July, 2024

Richard G. Andrews
United States District Judge