IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| EMPOWER BRANDS LLC f/k/a HPC BRANDS LLC,<br><br>Plaintiff,<br><br>v.<br><br>TRISTAR PRODUCTS, INC., KISHORE MIRCHANDANI, and TREND MAKERS LLC,<br><br>Defendants. | Civil Action No. 23-01225-RGA |

MEMORANDUM ORDER

Before me is Plaintiff's Motion for Leave to File Amended Complaint and Incorporated Memorandum of Law. (D.I. 39). I have considered the parties' briefing. (D.I. 39, 44, 46). Defendants filed a Motion for Leave to File a Sur-Reply. (D.I. 47). I have considered the parties' briefing. (D.I. 47, 49, 50). For the reasons set forth below, Plaintiff's motion for leave to file amended complaint is **GRANTED** in part and **DENIED** in part. Defendants' motion for leave to file a sur-reply is **GRANTED**.

I.   BACKGROUND[1]

Plaintiff Empower Brands is a limited liability company whose sole member is Spectrum Brands, Inc. Spectrum is a Delaware corporation with its principal place of business in Wisconsin. Defendant Tristar Products is a Florida corporation with its principal place of

---

[1] Jurisdiction is based on diversity of citizenship. (D.I. 39-1 at 2–3); *see* 28 U.S.C. § 1332; *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) ("The citizenship of an LLC is determined by the citizenship of its members."). Governing law per the Membership Interest Purchase Agreement ("MIPA") is Delaware law. (D.I. 1-2 at 86 of 266, § 10.14).

1

business in Florida. Defendant Kishore Mirchandani is a resident and citizen of Florida. Defendant Trend Makers is a limited liability company whose sole member is Mirchandani. (D.I. 39-1 at 2–3).

Empower first brought this case in the Court of Chancery of the State of Delaware against Defendants Tristar, Mirchandani, and Trend Makers. (D.I. 1-1 at 1). Defendants then removed to the District of Delaware. (D.I. 1-21).

Defendants Tristar and Mirchandani sold their membership interests in HPC Brands (now Empower) to Spectrum pursuant to a Membership Interest Purchase Agreement ("MIPA"). (D.I. 39-1 at 1–2). The sale involved HPC Brands' line of home-essentials and kitchen-appliance products. (*Id.* at 2). Plaintiff contends that, after the closing, it became aware of consumer claims of personal and property injuries caused by certain of these products. (*Id.*). Plaintiff contends it stopped selling those products and conducted recalls in accordance with guidance and requirements from the U.S. Consumer Product Safety Commission. (*Id.*). Under the MIPA, Defendants Tristar and Mirchandani retained liability for "Excluded Liabilities," which relate to pre-closing sales. (*Id.*; D.I. 1-3 at 18 of 38, Schedule D). Plaintiff contends that its recall-related expenses are "Excluded Liabilities," and that Defendants have refused to honor their obligations to indemnify Plaintiff. (D.I. 39-1 at 2, 8; *see* D.I. 1-2 at 81 of 266, § 9.4(g)).

I previously granted Defendants' motion to dismiss due to Plaintiff's failure to allege satisfaction of a condition precedent when Plaintiff failed to seek indemnification in the manner prescribed by the MIPA. (D.I. 34 at 4, 6). Plaintiff now seeks to file an amended complaint. (D.I. 39).

## II.    LEGAL STANDARD

Rule 15(a)(2) states that, apart from amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Third Circuit has construed Rule 15 liberally, instructing that "absent undue or substantial prejudice, an amendment should be allowed under Rule 15(a) unless denial can be grounded in bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment." *Long v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (citing *Lundy v. Adamar of New Jersey, Inc.*, 34 F.3d 1173, 1196 (3d Cir. 1994)) (emphasis omitted) (cleaned up).

"Under Rule 15(a), futility of amendment is a sufficient basis to deny leave to amend. Futility means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010) (internal quotation and citation omitted). The futility analysis follows the standard that applies to a motion under Rule 12(b)(6)—namely the *Twombly/Iqbal* pleading standard. *Id.* at 175–77; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)) ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."). The "Court determines futility by taking all pleaded allegations as true and viewing them in a light most favorable to the plaintiff." *Great W. Mining & Min.*, 615 F.3d at 175 (citing *Winer Family Trust v. Queen*, 503 F.3d 319, 331 (3d Cir. 2007)).

3

### III. DISCUSSION

#### A. Defendants' Motion to File a Sur-Reply

Generally, sur-replies are disfavored. Local Rule 7.1.2 states that parties require the Court's approval to submit additional papers after briefing is complete. D. Del. LR 7.1.2(b). I may grant leave to file a sur-reply if the sur-reply responds to new facts, evidence, or arguments raised for the first time in a reply brief. *EMC Corp. v. Pure Storage, Inc.*, 154 F. Supp. 3d 81, 103 (D. Del. 2016). Here, Defendants' sur-reply responds to the statement of a legal standard for denying leave to amend as futile in Plaintiff's reply brief. (D.I. 47 at 1). The statement and its supporting citation to an old district court opinion did not appear in Plaintiff's "incorporated memorandum of law." (D.I. 39). Defendants contend they conferred with Plaintiff and asked Plaintiff to correct its statement, but Plaintiff declined to do so. (D.I. 47 at 2). Defendants' sur-reply thus responds to a new argument raised in the reply brief. Therefore, I **GRANT** Defendants' motion for leave to file a sur-reply. Plaintiff's proposed legal standard is wrong. I will decide this motion under the standard articulated in *Great Western Mining & Mineral Co.*

#### B. Futility

A court may deny amendment to a complaint in cases of "bad faith or dilatory motive, truly undue or unexplained delay, repeated failure to cure deficiency by amendments previously allowed or futility of amendment.'" *Long*, 393 F.3d at 400 (internal citation and emphasis omitted). Defendants oppose only the claims in Plaintiff's amended complaint against Trend Makers as futile. (D.I. 44 at 4, 6).

4

### 1. Trend Makers As Successor to Tristar

Plaintiff asserts that inclusion of Trend Makers as a Defendant is not futile because "Trend Makers is liable as Tristar's successor entity." (D.I. 46 at 8). The contract signed by the parties does not support this proposition. Section 10.19 of the MIPA states that:

> [A]ny claim, action, suit or other Proceeding based upon, arising out of, or related to this Agreement . . . may only be brought against the entities that are expressly named as parties hereto. . . . No past, present or future . . . Affiliate[2] of any party hereto, or any of their successors . . . shall have any liability for any obligations . . . under this Agreement or for any claim or action based on, in respect of or by reason of the transactions contemplated hereby.

(D.I. 1-2 at 87 of 266, § 10.19). The parties to the MIPA are HPC Brands, LLC (now known as Empower (D.I. 39 at 2)); Tristar Products, Inc.; Spectrum Brands, Inc.; and Kishore Mirchandani. (D.I. 1-2 at 8 of 266).

Even if Trend Makers were a successor entity to Tristar, the MIPA disclaims liability for successors of parties to the contract. Therefore, I find that Trend Makers is not plausibly liable as a successor to Tristar.

### 2. Trend Makers As Alter Ego of Tristar

Despite Section 10.19 of the MIPA, Plaintiff alleges that Trend Makers is liable under the agreement and a proper defendant because it is an alter ego of Tristar.

Plaintiff states that Tristar's employees, products, retailer relationships, domain name, employee emails, mail, computer systems and databases were transferred to Trend Makers after execution of the MIPA "in exchange for no consideration." (D.I. 39-1 at 10–

---

[2] "Affiliate" is defined in the MIPA as "with respect to any Person, any other Person who directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with, such Person. . . ." (D.I. 1-2 at 8 of 266, § 1.1). "Person" is defined as "an individual, partnership, corporation, limited liability company, joint stock company, unincorporated organization or association, trust, joint venture, association or other organization, whether or not a legal entity, or a Governmental Authority." (*Id.* at 19 of 266, § 1.1).

5

11). Plaintiff alleges, "None of these transfers of Tristar's assets and operations to Trend Makers was pursuant to any written, executed agreement between or among Defendants and did not occur at arms' length." (*Id.* at 11).

Plaintiff states Mirchandani controls both Tristar and Trend Makers and provided initial funding for Trend Makers. (*Id.* at 10–11). When formed, Trend Makers had the same address as Tristar. (*Id.* at 11). Both Tristar and Trend Makers have the same stated business "purposes." (*Id.*). Plaintiff claims Mirchandani disregarded corporate formalities between Tristar and Trend Makers, citing as evidence Tristar's stoppage of commission payments to employees and forwarding of privileged communications to Trend Makers. (*Id.* at 12). Because of these actions, Plaintiff states that Tristar is "undercapitalized and unable to perform its indemnity obligations to Empower." (*Id.*). Accordingly, Plaintiff alleges, "Defendants have attempted to perpetrate a fraud or injustice on Empower by disregarding Tristar's corporate existence[.]" (*Id.*).

"A federal court sitting in diversity must apply state substantive law and federal procedural law." *Liggon-Redding v. Est. of Sugarman*, 659 F.3d 258, 262 (3d Cir. 2011) (citing *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938)). The question of corporate veil-piercing is one of substantive law. Accordingly, I apply Delaware law.

"The alter ego doctrine is used to pierce the corporate veil when a corporation has created 'a sham entity designed to defraud investors and creditors.'" *In re Verizon Ins. Coverage Appeals*, 222 A.3d 566, 577 (Del. 2019) (citing *Crosse v. BCBSD, Inc.*, 836 A.2d 492, 497 (Del. 2003)). "[P]ersuading a Delaware Court to disregard the corporate entity is a difficult task." *Mason v. Network of Wilmington, Inc.*, 2005 WL 1653954, at *2 (Del. Ch. July 1, 2005) (alteration in original). The relevant factors to consider when

deciding whether to pierce the corporate veil are: "(1) whether the company was adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a façade for the dominant shareholder." *Verdantus Advisors, LLC v. Parker Infrastructure Partners, LLC*, 2022 WL 611274, at *2 (Del. Ch. March 2, 2022) (internal citation omitted). "The decision to disregard the corporate entity generally results not from a single factor, but rather from some combination of them, and an overall element of injustice or unfairness must always be present." *Doberstein v. G-P Indus., Inc*, 2015 WL 6606484, at *4 (Del. Ch. Oct. 30, 2015) (internal citation omitted).

In stating that Trend Makers is an alter ego of Tristar, Plaintiff asserts a "horizontal veil piercing" theory of liability in which "the court is asked to ignore the autonomous corporate structures of affiliate corporations and make their assets available to satisfy claims." *Roth Staffing Cos. v. Brown*, 2016 WL 308773, at *5 n.7 (D. Conn. Jan. 25, 2016).[3] Horizontal veil piercing has "not been adopted in Delaware." *Cleveland-Cliffs Burns Harbor LLC v. Boomerang Tube, LLC*, 2023 WL 5688392, at *7 (Del. Ch. Sept. 5, 2023); *see also Sentry Supply Inc. v. NLMK N. Am. Plate LLC*, 2019 WL 1388793, at *5 (W.D. La. Mar. 27, 2019) (applying Delaware law) ("Delaware has not adopted the single business enterprise doctrine as a means of piercing the corporate veil.").

---

[3] The *Roth Staffing* Court was speaking more generally in referring to "affiliate corporations." "Affiliate corporations exist when two or more corporations are controlled by the same, or substantially the same owners but neither has an ownership interest in the other." *Roth Staffing*, 2016 WL 308773, at *5 n.7 (internal citation omitted). Another term for "affiliate corporations" is "sister corporations." *See Sister Corporation*, Black's Law Dictionary (12th ed. 2024).

7

Even if Delaware were to accept the horizontal veil piercing doctrine, it would not matter. Delaware courts also require "an overall element of injustice or unfairness" to pierce to corporate veil. *Doberstein*, 2015 WL 6606484, at *4. The MIPA provides that the Indemnity Escrow Amount as of the closing date is $50 million "if the R&W Insurance Policy has not been bound" as of the Closing Date, and $25 million if the policy "has been bound." (D.I. 1-2 at 15 of 266, § 1.1).[4] If the Indemnity Escrow Account is insufficient, Defendants point out that Plaintiff may seek indemnification from either Tristar or Mirchandani personally. (D.I. 44 at 2; *see* D.I. 1-2 at 81 of 266, § 9.4(g)). Defendants assert, "[Plaintiff] cannot allege that either the Indemnity Escrow Amount or Mirchandani is or will be unable to satisfy a judgment[.]" (D.I. 44 at 9). Therefore, Defendants argue, "[Plaintiff] cannot plausibly allege that Trend Makers was formed in order to perpetrate a fraud upon its alleged creditors[.]" (*Id.* at 2). Plaintiff counters that the Indemnity Escrow Amount "will become unavailable . . . when [Plaintiff's] growing Losses exceed the funds available. . . or the [Indemnity Escrow Amount] is exhausted to satisfy [Plaintiff's] other pending indemnification claims." (D.I. 46 at 3).

As things currently stand, Plaintiff has three sources from which to seek indemnity: the Indemnity Escrow Amount, Tristar, and Mirchandani.[5] (D.I. 1-2 at 81 of 266, § 9.4(g)). Plaintiff has not alleged any facts to suggest current insufficiency of assets that would prevent Plaintiff from recovering what it alleges it is due. Even if Plaintiff were not asserting a horizontal veil piercing theory unsupported by Delaware law, I do not

---

[4] Defendants state that the Indemnity Escrow Amount "contains more than $26,000,000.00—nearly three times the amount" of Plaintiff's claims for indemnification. (D.I. 44 at 1–2). I do not rely upon this statement, since it is not in the Amended Complaint.
[5] The Amended Complaint alleges that insurance has been exhausted and is no longer a potential source of funds. (D.I. 39-1 at 9, ¶¶ 44–45).

8

see a plausible factual basis for alleging an "overall element of injustice or unfairness" that would support piercing the corporate veil. *Doberstein*, 2015 WL 6606484, at *4. Therefore, I find that Plaintiff has failed to plausibly state a claim of alter ego liability against Trend Makers.

Plaintiff's claims against Trend Makers are futile. *See Long*, 393 F.3d at 400. Plaintiff's motion to amend its complaint as to the claims against Trend Makers is **DENIED**.

IV. **CONCLUSION**

For the reasons stated above, Plaintiff's motion for leave to amend (D.I. 39) is **DENIED** as to the claims against Defendant Trend Makers, but otherwise is **GRANTED**. Plaintiff shall file an amended complaint consistent with this Memorandum Order by December 30, 2024.

IT IS SO ORDERED.

Entered this 12th day of December, 2024

_____
United States District Judge