**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| EMPOWER BRANDS LLC f/k/a HPC BRANDS LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>TRISTAR PRODUCTS, INC., a Florida corporation, and KISHORE MIRCHANDANI, an individual,<br><br>Defendants. | Civil Action No. 23-1225-RGA |
| SPECTRUM BRANDS INC.,<br><br>Plaintiff,<br><br>v.<br><br>TRISTAR PRODUCTS, INC., KISHORE MIRCHANDANI, individually and as trustee of AM KARMA 2021 FAMILY TRUST, ANJALI MIRCHANDANI, individually and as trustee of KM KARMA 2021 FAMILY TRUST, STEVEN SOWERS, as trustee of AM KARMA 2021 FAMILY TRUST and KM KARMA 2021 FAMILY TRUST, AM KARMA 2021 FAMILY TRUST, KM KARMA 2021 FAMILY TRUST, A&R REALTY ENTERPRISES LLC, CENTRE AVENUE LLC, and MT. ANDERSON LLC,<br><br>Defendants. | Civil Action No. 25-46-RGA |

MEMORANDUM ORDER

Before me is Defendants'[1] Motion to Disqualify Counsel. (D.I. 130).[2] I have considered the parties' briefing. (D.I. 131, 133, 138). For the reasons set forth below, this motion is DENIED.

## I. BACKGROUND

In February 2022, Spectrum Brands Inc. ("Spectrum") acquired the membership interests of kitchen appliance business Empower Brands, LLC ("Empower") (together with Spectrum, "Plaintiffs") from Tristar Products, Inc. ("Tristar"), as memorialized by the Membership Interest Purchase Agreement ("Agreement"). (D.I. 56 ¶ 2). After the acquisition, "Empower became aware of consumer claims alleging that certain of the products were causing physical and/or property injuries." (*Id.* ¶ 3). These products include certain juicers, waffle makers, and air fryers, specifically the "PowerXL DUAF-10 Vortex Dual-Basket Air Fryer (10 qt) and DUAF-005 Vortex Dual-Basket Air Fryer (9 qt)." (*Id.* ¶ 25; *see id.* ¶¶ 17–39). As a result, Empower, in implementing remedial measures, "incurred millions of dollars in recall-related expenses and anticipates having to incur significantly more." (*Id.* ¶ 3).

In September 2023, Empower, represented by Greenberg Traurig ("Greenberg"), sued Tristar and Mr. Mirchandani for indemnification of recall-related expenses under the Agreement.[3] (*Id.* ¶¶ 4, 8). In January 2025, Spectrum, also represented by Greenberg, sued Tristar, Mr. Mirchandani, and other parties for fraud related to Spectrum's purchase of Empower. (Civil Action No. 25-cv-46-RGA, D.I. 1).

---

1 "Defendants" refers to Tristar Products, Inc., Kishore "Keith" Mirchandani, Steven Sowers, AM Karma 2021 Family Trust, A&R Realty Enterprises LLC, Centre Avenue LLC, and Mt. Anderson LLC. The defendants Anjali Mirchandani and KM Karma 2021 Family Trust are not movants here.

2 Unless otherwise stated, all citations are to Civil Action No. 23-1225-RGA.

3 Empower initially filed its complaint in the Court of Chancery of the State of Delaware. Shortly afterward, the case was moved here. (D.I. 56 ¶ 8).

Meanwhile, in *Dougherty v. Target Corp.*, No. 2:24-cv-03002 (E.D. Cal.), plaintiffs brought a wrongful death case against Empower, Tristar, and Target Corp., based on an alleged defect in a PowerXL air fryer not recalled by Empower. (D.I. 131-6 Ex. F (identifying the air fryer in *Dougherty* as the "PowerXL Vortex Classic 5-quart air fryer model ID1501A"); *see also Dougherty*, D.I. 1 ¶ 2). At first, Empower, Tristar, and Target were all represented by the law firms Ellis & Winters and Willenken. (D.I. 131-8 Ex. H). In late September 2025, Greenberg attorneys replaced Ellis & Winters and entered appearances for Tristar in *Dougherty*. (*Dougherty*, D.I. 54, 57, 60, 63–68).

Greenberg states that it became aware of the concurrent conflict on November 25, 2025. (D.I. 133 at 7). On December 4, 2025, Greenberg sent Tristar an email notifying Tristar of the firm's concurrent conflict. (D.I. 125 ¶ 13). The next day, Tristar filed an emergency motion for a temporary stay pending the presentment and resolution of the counsel disqualification question before me. (*See generally id.*). I granted the motion. (D.I. 129). Greenberg's withdrawal as Tristar's counsel in *Dougherty* was finalized on December 23, 2025. (*Dougherty*, D.I. 75).

## II. LEGAL STANDARDS

This Court has summarized the relevant legal principles for determining a motion to disqualify counsel:

> The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007) (internal quotation marks and citations omitted); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006) (same). Because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," however, a court may disqualify an attorney "for failing to avoid even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992).

> Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct ("M.R.P.C."). *See* D. Del. LR 83.6(d)(2).[[4]]

*Intell. Ventures I LLC v. Checkpoint Software Techs. Ltd.*, 2011 WL 2692968, at *4–5 (D. Del. June 22, 2011).

Model Rule 1.7 bars representation involving a concurrent conflict—that is, when "representation of one client is directly adverse to another client." M.R.P.C. 1.7(a). Under Model Rule 1.7(b), a lawyer may proceed despite a concurrent conflict only if four conditions are met:

> (1) The lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; (2) the representation is not prohibited by law; (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and (4) each affected client gives informed consent, confirmed in writing.

"If any of those requirements is not met[,] . . . the conflicted counsel must withdraw or be disqualified." *United States v. Bellille*, 962 F.3d 731, 739 (3d Cir. 2020).

M.R.P.C. Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

This Court has previously outlined the components of a Rule 1.9 analysis:

> To establish that a representation violates Rule 1.9, four elements must be shown: "(1) the lawyer must have had an attorney-client relationship with the former client; (2) the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter; (3) the interests of the second client must be materially adverse to the interests of the former client; and (4) the former client must not have consented to the representation after consultation." *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009).

---

[4] D. Del. LR 83.6(d)(2) is now D. Del. LR 83.6(d). The Model Rules of Professional Conduct remain the guiding standard.

To determine whether a current matter is "substantially related" to a matter involved in a former representation, and, thus, whether disqualification under Rule 1.9 is appropriate, the Court must answer the following three questions: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987) (internal quotation marks and citations omitted); *see also Talecris*, 491 F. Supp. 2d at 514.

As the Third Circuit has explained, M.R.P.C. 1.9 exists for the purpose of preventing "even the potential that a former client's confidences and secrets may be used against him," to maintain "public confidence in the integrity of the bar," and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained." *Corn Derivatives*, 748 F.2d at 162. Therefore, in attempting to determine whether a "substantial relationship" exists, "disqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 973 (D.N.J. 1996) (internal quotation marks and citations omitted). While the party seeking disqualification bears the burden of establishing the existence of a substantial relationship, any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client confidences. *See INA Underwriters v. Nalibotsky*, 594 F. Supp. 1199, 1207 (E.D. Pa. 1984); *see also Buschmeier v. G & G Invs., Inc.*, 2007 WL 4150408, at *7 (E.D. Pa. Nov. 19, 2007).

To the extent that a motion to disqualify involves imputing an individual lawyer's representation to an entire firm, M.R.P.C. 1.10(a) is also relevant. Rule 1.10(a)(1) provides;

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

. . .

Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances." *Nemours Found. v. Gilbane, Aetna,*

> *Fed. Ins. Co.*, 632 F. Supp. 418, 428 (D. Del. 1986) (internal citations and quotation marks omitted). Indeed, "whether disqualification is appropriate depends on the facts of the case and is never automatic." *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F. Supp. 2d 369, 374 n.7 (D. Del. 2009). The required inquiry necessarily involves "a painstaking analysis of the facts." *Satellite Fin. Planning*, 652 F. Supp. at 1283 (internal quotation marks omitted); *see also Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) ("Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts."). Furthermore, the Court approaches motions to disqualify counsel with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27-28 (D.D.C. 1984).

*Intell. Ventures I*, 2011 WL 2692968, at *5–6.

The Third Circuit "has often employed a balancing test in determining the appropriateness of the disqualification of an attorney." *Corn Derivatives*, 748 F.2d at 162; *see also Carlyle Towers*, 944 F. Supp. at 345 ("The ethical rules should not be blindly applied without consideration of relative hardships."). I will thus consider "several different factors to determine whether, on balance, disqualification . . . is merited." *Intell. Ventures I*, 2011 WL 2692968, at *14. This court summarized some of the factors weighed by courts in the Third Circuit: attorney loyalty, prejudice to parties, protection of the integrity of the judicial process, geography, timing of disqualification motion, duration of prior representation, delay, stage of proceedings, whether confidential information from the prior representation had passed to the client, cost to obtain new counsel, complexity of the case, size of the firm, nature and degree of prior involvement, and whether there was any ulterior motive for filing the motion to disqualify. *Id.* (citing *Elonex I.P. Holdings, Ltd. v. Apple Computer, Inc.*, 142 F. Supp. 2d 579, 583 (D. Del. 2001); *Carlyle Towers*, 944 F. Supp. at 348; *Nemours*, 632 F. Supp. at 428–30; *End of Road Tr. v. Terex Corp.*, 2002 WL 242464, at *2 (D. Del. Feb. 20, 2002)).

## III. DISCUSSION

### A. Disqualifying Conflict

As an initial matter, the parties disagree on whether there are ethical violations that may warrant disqualification of counsel. Defendants argue that Greenberg violated both Rules 1.7 and 1.9. (D.I. 131 at 1, 12–17). I address each asserted violation in turn.

#### 1. Rule 1.7

Greenberg concurrently represented Tristar in *Dougherty* and parties directly adverse to Tristar, *i.e.*, Empower and Spectrum, in two actions before me. This, Defendants say, "is a clear violation of Rule 1.7." (D.I. 131 at 12). Defendants point out—and Plaintiffs no longer overtly argue[5]—that Greenberg did not meet the conditions of M.R.P.C. 1.7(b) that are necessary for concurrent representation. (D.I. 131 at 12–13; D.I. 133 at 9). Plaintiffs now argue that any such Rule 1.7 violation is moot because their withdrawal "cures" it. (D.I. 133 at 9).

Withdrawing does not erase the fact that during this dispute, Greenberg had a concurrent conflict and was in violation of Rule 1.7. This is not a situation where the concurrent conflict was "thrust upon" the law firm, *i.e.*, where the "conflict ar[ose] after representation ha[d] been undertaken." *See* M.R.P.C. 1.7 cmt. 4. Because the conflict of interest was present before

---

[5] Earlier, Plaintiffs argued they obtained informed consent from Tristar. (*See* D.I. 129). I said "that argument looks like a loser" because Plaintiffs "do[] not suggest any discussion of the relevant issues with Tristar at all." (*Id.*). Greenberg now says that it "does not press [this argument] here in light of the Court's prior comments," but it "continues to believe that [Tristar counsel]'s assent to the substitution constitutes consent by a sophisticated party." (D.I. 133 at 10 n.5).

That said, Plaintiffs also argue that Tristar's counsel waived its right to disqualify Greenberg by not raising its objections earlier. (*Id.* at 17–18). This argument relies, and the informed consent argument I rejected earlier relies, on the same factual basis—Tristar's counsel's not realizing there were conflicting interests. This seems to me like another dubious attempt to shift the responsibility of avoiding concurrent conflicts onto the client. I reject it.

Greenberg represented Tristar in *Dougherty*, the firm had a professional responsibility to decline representation or obtain informed consent. *See* M.R.P.C. 1.7 cmt. 3.

The question here, though, is how to consider this ethical violation in a motion to disqualify counsel. Rule 1.7(a) was enacted "to prevent divided loyalties and to protect against the disclosure of client confidences." *End of Road Tr.*, 2002 WL 242464, at *3 (citing *IBM v. Levin*, 579 F.2d 271, 280 (3d Cir. 1978)). At this point, Greenberg's loyalties are no longer divided. I thus focus on the issue of protecting against the disclosure of client confidences. I discuss this below in my Rule 1.9 analysis.

**2. Rule 1.9**

The parties disagree on whether there is a Rule 1.9 violation. They dispute only one of the factors of a Rule 1.9 violation: whether the present client's matter is the same as or "substantially related" to the matter the lawyer worked on for the first client. (*See* D.I. 131 at 13, 16–17 (Defendants characterizing other factors as undisputed); D.I. 133 at 10 (Plaintiffs presenting argument on only whether the cases are substantially related)).

Defendants assert that the cases before me and *Dougherty* are substantially related. In both cases, plaintiffs "advance broad product-line defect theories related to the PowerXL Air Fryers and seek discovery into the same core subjects—product design and development, manufacturer communications, complaint-handling and internal investigations, regulatory interactions, and the tracking and timing of product sales and returns." (D.I. 131 at 15). Defendants assert that the discovery request and deposition topics in these cases are "nearly identical in some instances, and the same Tristar witnesses will testify regarding those topics in both matters." (*Id.* (citing D.I. 131-1 Ex. A; D.I. 131-6 Ex. F)).

Plaintiffs' main argument against a substantial relationship between the cases is that the air fryer model in *Dougherty* is not at issue in the actions before me. (D.I. 133 at 11–13). They characterize Defendants' assertions as merely "saying that both cases involve air fryers." (*Id.* at 11). Plaintiffs compare this case to *TQ Delta, LLC v. Comcast Communications, LLC*, 2021 WL 7209446 (D. Del. Dec. 17, 2021). (*See* D.I. 133 at 12). In *TQ Delta v. Comcast*, a patent infringement case on Multimedia over Coax Alliance ("MoCA") technologies, Broadcom sought disqualification of the law firm McAndrews because McAndrews previously represented Broadcom in prosecuting a patent on MoCA technologies. 2021 WL 7209446, at *1. The two patents at issue in *TQ Delta v. Comcast*, however, had not been prosecuted by McAndrews, and Broadcom did not show that "the subject matter of the only two patents-in-suit . . . was the subject matter of any work McAndrews once performed for Broadcom." *Id.* I thus found the matters in *TQ Delta v. Comcast* not substantially related. *Id.* According to Plaintiffs, "[t]he same analysis applies here." (D.I. 133 at 12; *see id.* at 13 (explaining that the *Dougherty* matter "relates to a different product, and involved facts and legal issues distinct from those" here)).

I disagree. It is true that *Dougherty* is a wrongful death case and the actions here center on fraud and contract disputes (*see id.* at 12), and the cases do not have a specific product in common. Nevertheless, the actions all focus on alleged defects across PowerXL products and the underlying systemic processes from which such defects emerged. The *Dougherty* plaintiffs alleged that PowerXL Vortex air fryers had design and manufacturing defects, which may lead to dangers and risks such as overheating, fires, or smoke inhalation. (*Dougherty*, D.I. 1-1 Ex. 1 ¶¶ 32, 34). Likewise, the fraud and indemnification disputes here are based on, among other issues, recalls of products for physical or property injuries. (*See* D.I. 56 ¶ 3). It is a reasonable inference that Greenberg learned about Tristar's alleged product defects in *Dougherty* and that such information

could be used against Tristar here. *See Innovative Memory Sols., Inc. v. Micron Tech., Inc.*, 2015 WL 2345657, at *5 (D. Del. May 15, 2015).

Plaintiffs say that because "Tristar identifies no privileged information that was shared with [Greenberg] during its brief representation of Tristar," Tristar has not shown there is a substantial relationship between *Dougherty* and the cases here. (*Id.* at 13–14 (citing *Regalo Int'l, LLC v. Munchkin, Inc.*, 211 F. Supp. 3d 682, 689 (D. Del. 2016); M.R.P.C. 1.9 cmt. 3)). Plaintiffs misstate Tristar's burden. Tristar does not have to identify privileged information; it only needs to show that it "may have disclosed confidences . . . in the prior representation that could be relevant to . . . or detrimental to" the present action. *Regalo*, 211 F. Supp. 3d at 689 (cleaned up); *see also* M.R.P.C. 1.9 cmt. 3 ("A former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter."). As explained above, Defendants have provided enough to show these cases are substantially related.

Plaintiffs assert that even if Tristar provided Greenberg with privileged and confidential information, Spectrum owns this information, so there is no Rule 1.9 violation. (D.I. 133 at 14–15). Spectrum's theories are that it obtained this information in its acquisition of Empower, or that Spectrum, by indemnifying Tristar in *Dougherty*, has a right to Tristar's information. (*Id.*). I am not convinced. Spectrum's ownership of Tristar's privileged and confidential information is implausible and contrary to the principles of legal ethics. Indeed, as Defendants point out, the Agreement and joint defense agreements clearly limit Plaintiffs' access to Tristar's information. (D.I. 138 at 10). For example, the Agreement provides for the transfer of some but not all assets and documents. (D.I. 1-2 Ex. B (Agreement) Schedule A (listing transferred assets and documents), Schedule B (listing excluded assets and documents)). Likewise, Section 9.3 of the

Agreement, which covers third-party claims, does not require indemnification if "a conflict of interest exists or would reasonably be expected to arise" in the event one party defends another. (*Id.* § 9.3(a)(ii)(D)). In the event of indemnification, the parties shall "reasonably cooperate in the defense or prosecution" and "furnish such records, information and testimony . . . as may be reasonably requested in connection therewith, *subject to appropriate procedures to protect confidential and/or privileged information*." (*Id.* § 9.3(b)) (emphasis added).

The matters at issue here are substantially related. Greenberg's representation of Plaintiffs in these ongoing litigations therefore violates Rule 1.9.

**B. Disqualification**

Defendants argue that Greenberg's conduct warrants disqualification. (D.I. 131 at 17–20). They address two areas of concern: prejudice against the litigants and tainting of the litigation. Upon review of these factors, I determine that disqualification is not warranted.

**1. Prejudice to the Parties**

Defendants contend that Tristar would be severely prejudiced by Greenberg's continued representation, as the firm obtained Tristar's privileged and confidential information and communicated with Tristar witnesses and deposition targets. (*Id.* at 17–18). Conversely, Defendants state that any prejudice Plaintiffs may suffer from disqualifying their counsel would be "slight" compared to the prejudice to Defendants if Greenberg is not disqualified. (*Id.* at 20; D.I. 138 at 7). Defendants argue that Spectrum, "a large public corporation which has existing relationships with numerous law firms," would not find it difficult "to find another sophisticated, non-conflicted law firm to represent it in this litigation," and that this law firm would have sufficient time to familiarize itself with the dispute. (D.I. 131 at 20; D.I. 138 at 7–8).

I see the prejudicial effects of disqualification differently. Greenberg represented Tristar from September 2025 to December 2025, a period of under three months. According to the firm, its brief representation of Tristar "was limited to fact discovery and investigating potential 30(b)(6) deponents." (D.I. 133 at 19 (citing D.I. 134 ¶ 10)). Moreover, there is no overlap between the Greenberg attorneys working on the matters here and those who worked on *Dougherty*, nor any communications of information between the two separate teams on these matters (*id.* at 5–6 (citing D.I. 134 ¶¶ 3, 13; D.I. 135 ¶¶ 27–28)), nor any geographic overlap (*see* D.I. 135 ¶ 18). The firm has since "implemented an ethical wall" and "restrictions which prevent sharing of information between the litigation teams." (D.I. 133 at 7 (citing D.I. 135 ¶ 27)). These factors weigh against disqualification. *See Elonex*, 142 F. Supp. 2d at 584 (denying disqualification motion because, among other factors, the work was done "out of different offices in different cities" and the firm "maintained an ethical wall" since it began its potentially conflicted representation). While the cases are substantially related, I find there is a very low likelihood that any confidential information that might have been gained in the representation of Tristar in *Dougherty* may be used to Tristar's detriment here.

On the other hand, I find that Plaintiffs would suffer significant prejudice from disqualification of its counsel. Greenberg has represented Spectrum and its subsidiaries since 2008 across at least 110 matters. (D.I. 133 at 3 (citing D.I. 135 ¶ 5)). In particular, the firm has represented Spectrum and Empower here in disputes arising from the transaction with Tristar since 2023. (*Id.* (citing D.I. 135 ¶¶ 4–5)). The matters before me involve complex commercial transactions and allegations of financial fraud against multiple defendants. (*Id.* at 19–20 (citing D.I. 135 ¶ 9)). Greenberg has logged over 10,000 hours in the matters here. (*Id.* at 18 (citing D.I. 135 ¶ 7)). If the firm is disqualified, getting new counsel up to speed "would come at a substantial

cost—in terms of both time and money." *TQ Delta, LLC v. 2Wire, Inc.*, 2016 WL 5402180, at *7 (D. Del. Sept. 26, 2016) (citing *Elonex*, 142 F. Supp. 2d at 584). I believe the prejudicial effects of disqualification weigh against such a remedy.

**2. Taint on the Litigation**

Next, Defendants assert that continued representation would "taint this litigation and create (at a minimum) the appearance of impropriety" (D.I. 131 at 18 (citing cases)). Allowing Greenberg to remain Plaintiffs' counsel, Defendants say, would fail to "protect individual clients" and undermine "public confidence in the fairness of adversarial proceedings." (D.I. 138 at 8). They specifically express concerns that any ethical screen Greenberg implements would be "an insufficient remedy." (D.I. 131 at 19; *see also* D.I. 138 at 6–7 (challenging the sufficiency of Greenberg's "belated ethical screen and purported separation between case teams")).

Protecting the integrity of the proceedings before me and maintaining public confidence in the judicial system does not, as I see it, weigh significantly in favor of disqualification. "[M]otions to disqualify are viewed with caution because of the potential for their misuse." *Elonex*, 142 F. Supp. 2d at 584. Depriving a party of its longstanding counsel may "*decrease* the integrity of and public confidence in these proceedings." *Id.* I think this is one such situation. This is not a side-switching scenario that would require disqualification. Greenberg initiated its representation in Tristar in *Dougherty* because its long-term client Spectrum was indemnifying Tristar in a case where the parties were co-defendants. While I am perplexed by Greenberg's failure to detect the conflict when it ran its check,[6] I do not believe disqualification is appropriate here to enforce the Model Rules of Professional Conduct.

---

[6] I am also less than impressed by Greenberg's actions upon discovering the conflict of interest. Greenberg represents that it waited nine days to disclose the conflict to Tristar. (*See* D.I. 135 ¶¶ 25–25; D.I. 138-2 Ex. B). That disclosure stated only: "As you also know, different

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion (D.I. 130) is DENIED.

IT IS SO ORDERED.

Entered this 21st day of October, 2026

Richard G. Andrews

United States District Judge

[Greenberg] lawyers represent Empower/Spectrum in a separate matter involving Tristar (Delaware case nos. 23-cv-1225 and 25-cv-46)." (D.I. 138-2 Ex. B).